UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BESMELLAH JAMALI,<br>Petitioner,<br>v.<br>CAMMILLA WAMSLEY, *et al.*,<br>Respondents. | Case No. C26-2333-MLP<br>ORDER |

Petitioner Besmellah Jamali is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this amended 28 U.S.C. § 2241 habeas action, asserting that his immigration detention has become unconstitutionally prolonged under the Fifth Amendment. (Dkt. # 11, ¶ 2.) He seeks a bond hearing and injunctive relief related to any future redetention and third-country removal. (*Id.* at 2, 15.) Respondents filed a return (dkt. # 15), supported by declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Christopher Hubbard (dkt. # 16) and their counsel Jennifer Wong (dkt. # 8). Petitioner filed a traverse in reply (dkt. # 17).

Having considered the parties' submissions and the governing law, the Court GRANTS in part the amended petition (dkt. # 11) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a citizen of Afghanistan who entered the United States near Lukeville, Arizona, on January 21, 2025. (Dkt. # 11, ¶ 18; Hubbard Decl., ¶ 4.) He was encountered by border patrol the same day, detained, and processed for expedited removal. (Hubbard Decl., ¶ 4.) On January 24, 2025, he was served with a Notice and Order of Expedited Removal. (*Id.* ¶ 5; *see* Wong Decl., Ex. 2.) Officer Hubbard states Petitioner was also served with a "Notice to [Noncitizen] Ordered Removed/Departure Verification" (Hubbard Decl., ¶ 5), but that form is not in the record. Petitioner was thereafter transferred to the NWIPC on February 2, 2025. (*Id.* ¶ 7.)

Petitioner was not expeditiously removed to Afghanistan. On February 28, 2025, ICE Enforcement and Removal Operations ("ERO") referred Petitioner to U.S. Citizenship and Immigration Services ("USCIS") for Convention Against Torture ("CAT") screening, which later made a "positive determination" on March 4, 2025. (Hubbard Decl., ¶¶ 8-9.)

Between March 17, 2025, and June 4, 2025, ERO sent "Requests for Acceptance of [Noncitizen]" forms to the consulates of Costa Rica, Panama, El Salvador, Mongolia, Paraguay, Spain, Philippines, United Kingdom, Australia, Chile, and Denmark. (Hubbard Decl., ¶¶ 10-12.) As of August 12, 2026, all countries had either denied or not responded to the requests. (*Id.*)

On June 8, 2025, ICE transferred Petitioner to temporary housing with the Alaskan Department of Corrections, and he was transferred back to the NWIPC on June 30, 2025. (Hubbard Decl., ¶¶ 13-14.)

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

On July 1, 2025, ERO served Petitioner with a Notice to Appear ("NTA"), charging Petitioner with inadmissibility under the Immigration and Nationality Act ("INA"). (Hubbard Decl., ¶ 15; *see* Wong Decl., Ex. 3.) On October 9, 2025, an immigration judge denied Petitioner's applications for relief from removal and ordered Petitioner removed to Afghanistan. (Wong Decl., Ex. 4.) On November 7, 2025, Petitioner filed an appeal of the removal order with the Board of Immigration Appeals ("BIA"), which remains pending. (Hubbard Decl., ¶ 17.)

On December 16, 2025, ICE served Petitioner with a Warrant of Removal/Deportation ("I-205"). (Hubbard Decl., ¶ 18.) The I-205 is not in the record and the purpose of serving Petitioner with the warrant of removal is not explained by Respondents or immediately apparent.

On July 29, 2026, Petitioner filed this amended petition, raising various claims related to his detention. (Dkt. # 11.)

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner asserts claims under the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture, and the Administrative Procedure Act ("APA") and implementing federal regulations, but the overall thrust of the petition challenges Petitioner's current, nineteen-month detention without a bond hearing as unlawfully prolonged. (*See generally* dkt. # 11.)

Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and that the circumstances of his detention, when assessed under *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), do not entitle him to a bond hearing under due process. (Dkt. # 15 at 6-10.) Alternatively, Respondents suggest that if Petitioner is detained under § 1226(a), he is not entitled to habeas relief because he did not exhaust his administrative remedies by first requesting a bond hearing with the immigration court. (*Id.* at 5.)

**A. Statutory Detention Authority**

Although Petitioner does not discuss the various statutory regimes governing immigration in his petition, he posits that the government likely classifies his detention as mandatory under 8 U.S.C. § 1225(b)(2) in light of the current administration's recent shift in policy. (Dkt. # 11, ¶ 21.) Indeed, Respondents' primary position is that Petitioner is subject to mandatory detention under § 1225(b)(2) as an applicant for admission because he was detained within fourteen days of entry without inspection and within 100 air miles of an international land border. (Dkt. # 15 at 5 (citing *Dep't. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 n.2 (2020)).) Petitioner does not challenge Respondents' § 1225(b) classification in his reply (*see* dkt. # 17 at 1), so the Court will proceed to assess his prolonged detention claim through the lens of § 1225(b).

**B. Prolonged Detention Under *Banda***

Courts in this District apply the "*Banda*" test in determining whether a noncitizen's detention under § 1225(b) violates due process. *See, e.g.*, *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 921 (W.D. Wash. 2020); *Zazai v. Scott*, 2026 WL 2363649, at *2-3 (W.D. Wash. Aug. 14, 2026). In *Banda*, the court found that an "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda*, 385 F. Supp. 3d at 1106, 1117. The court declined to adopt a rule that detention became unreasonably prolonged at six months,

explaining that, pursuant to *Zadvydas*, "at six months, the burden is on the detainee – not the government – to establish a basis for release[,]" and found such a rule would be "inconsistent with the fact-dependent nature of the constitutional question before the court, namely whether petitioner's prolonged detention has become unreasonable." *Id*. at 1117 (citing *Zadvydas*, 533 U.S. at 701). The court, instead, adopted a multi-factor test to apply in determining whether § 1225(b) detention has become unreasonable, considering: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id*. at 1106 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

Both parties apply the *Banda* framework to Petitioner's detention but reach opposite conclusions. (Dkt. ## 11 at 9-10, 15 at 6-10, 17 at 9-14.)

1. *Length of Detention*

The first factor, the length of detention to date, is the most important. *Banda*, 385 F. Supp. 3d at 1118. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (citing cases).

As of the date of this Order, Petitioner has been detained by ICE for nineteen months, which Respondents acknowledge is a length "[c]ourts in this District typically find unreasonable." (Dkt. # 15 at 7.) Indeed, courts in this District have found that periods of detention ranging from eleven to thirty months favor the detainee. *See, e.g.*, *Maliwat v. Scott*, 2025 WL 2256711, at *4 (W.D. Wash. Aug. 7, 2025); *Toktosunov v. Wamsley*, 2025 WL

3492858, at *4 (W.D. Wash. Dec. 5, 2025) (finding 16 months of detention favored detainee); *Banda*, 385 F. Supp. at 1118-19 (finding approximate 17-month detention strongly favored detainee). The Court therefore finds the first *Banda* factor strongly weighs in favor of Petitioner.

*2. Likely Duration of Future Detention*

Under the second *Banda* factor, the Court considers how long the petitioner's detention is likely to continue absent judicial intervention, *i.e.,* "the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 119 (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Respondents suggest this factor should be neutral, despite acknowledging Petitioner's appeal before the BIA has been pending since November 7, 2025. (Dkt. # 15 at 8.) Respondents assert that "[i]f the BIA affirms the IJ's removal order, Petitioner will then be subject to an administratively final order of removal." (*Id.*) While this is true, an administratively final order does not always equate to a timely removal, as evidenced by *Zadvydas* and the progeny of cases assessing claims of prolonged, final-order detentions. Moreover, even if the BIA does affirm, Petitioner could seek additional judicial review. *See Banda*, 385 F. Supp. 3d at 1119 ("Petitioner only recently filed his appeal of the IJ's removal order with the BIA. If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer. This factor favors granting petitioner a bond hearing.").

The Court therefore finds that the second *Banda* factor weighs in favor of Petitioner.

*3. Conditions of Detention*

Under the third *Banda* factor, the Court considers the conditions of Petitioner's detention at the facility where he is currently detained. "The more that the conditions under which the

[noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. at 1119 (citation modified).

Respondents assert that Petitioner "does not present any allegations regarding his conditions of detention or argue that the conditions at the NWIPC are penal or similar to those in prisons or jails." (Dkt. # 15 at 8.) This position requires ignoring an entire paragraph within the petition devoted to documenting the conditions within the NWIPC and the toll Petitioner's detention has taken on his health. (*See* dkt. # 11, ¶ 22.) Petitioner asserts he has developed anxiety and depression, possibly "due in part to lack of sleep." (*Id.*) He contends his housing unit contains approximately 115 individuals and is only quiet between the hours of 2:00 A.M. and 5:00 A.M. (*Id.*) He claims that the lights are never fully turned off, which has caused sleep deprivation and eye problems. (*Id.*) He also asserts that, despite visiting the NWIPC doctor multiple times for a knee injury, it remains undiagnosed and insufficiently treated. (*Id.*)

Courts in this District have found in prior actions that conditions at the NWIPC are "similar . . . to those in many prisons and jails." *Maliwat*, 2025 WL 2256711, at *6 (citing *Doe v. Bostock*, 2024 WL 3291033, at *11 (W.D. Wash. March 29, 2024)); *Rahman v. Garland*, 2025 WL 1920341, at *4 (W.D. Wash. June 26, 2025)); *see also Toktosunov*, 2025 WL 3492858, at *5. Because Petitioner provides evidence supporting the similarity between conditions at the NWIPC and the penal conditions of criminal incarceration, the Court here finds the third factor weighs in Petitioner's favor.

*4. Delays in the Removal Proceedings Caused by Petitioner*

Under the fourth *Banda* factor, the Court considers delays in the removal proceedings caused by the Petitioner. *Banda*, 385 F. Supp. 3d at 1119. Respondents concede there is no evidence that Petitioner delayed removal proceedings, and both parties suggest that should weigh

neutral. (Dkt. ## 15 at 9, 17 at 13.) The Court observes that in *Banda*, the lack of dilatory tactics by Petitioner weighed in favor of a bond hearing, *see* 385 F. Supp. 3d at 1119-20, but will consider it neutral as agreed by the parties.

*5. Delays in the Removal Proceedings Caused by Respondents*

Under the fifth factor, the Court "considers the nature and extent of any delays in the removal proceedings caused by the government." *Banda*, 385 F. Supp. at 1120. Respondents contend Petitioner has not identified any delay caused by Respondents and this factor should therefore weigh neutral. (Dkt. # 15 at 9.) Petitioner asserts for the first time in his reply that the "[a]dministration has chosen to drastically reduce the number of immigration judges." (Dkt. # 17 at 13.) He cites a hyperlinked February 23, 2026 NPR article in support. (*Id.*) The Court will not consider this argument, or the evidence offered in support, raised for the first time in reply. *See In re P. Enterprises Securities Litig.*, 47 F.3d 373, 379 n.6 (9th Cir. 1995). There is no other evidence showing Respondents delayed proceedings, so this factor weighs neutral.

*6. Likelihood Removal Proceedings Will Result in Final Order of Removal*

The parties agree that this factor should weigh neutral. (Dkt. ## 15 at 9-10, 17 at 13-14.)

*7. Weighing the Factors*

In sum, three factors (length of detention, duration of future detention, conditions of detention), including the most important factor, weigh in Petitioner's favor, while the remaining factors weigh neutral. The Court therefore concludes that the *Banda* test favors Petitioner, that his continued detention under § 1225(b) has become unreasonably prolonged, and that due process requires he be provided a bond hearing. *See Banda*, 385 F. Supp. 3d at 1120; *Rahmani v. Bondi*, 2026 WL 638364, at *6 (W.D. Wash. Mar. 6, 2026) (granting relief under *Banda* where three factors favored Petitioner) (collecting cases).

The Court, consistent with the practice of this District, will order that a bond hearing be held before an immigration judge within fourteen days of this Order. *See, e.g.*, *Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10. Also, Respondents are properly held to a clear and convincing standard of proof at that hearing. *See Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Banda*, 385 F. Supp. 3d at 1107. If Respondents fail to meet that burden to show Petitioner should remain detained, Petitioner's financial circumstances and alternative release conditions must be considered. *See, e.g., Maliwat*, 2025 WL 2256711, at *10.

**C. Requests for Injunctive Relief**

Petitioner summarily concludes, with little factual development or legal argument, that "[t]he Fifth Amendment, the INA, the CAT, and implementing regulations mandate meaningful notice and [an] opportunity to respond to any attempt to remove [him] to a third country in reopened removal proceedings." (Dkt. # 11, ¶ 39.) He seeks to enjoin the government from removing him to any country other than Afghanistan, claiming it would be "punitive." (*Id.* at 15.) Alternatively, Petitioner seeks a court order requiring the government to first satisfy certain criteria before attempting to remove Petitioner to any country other than Afghanistan. (*Id.* at 16.) Respondents contend that Petitioner's requests are either unripe or beyond this Court's jurisdiction. (Dkt. # 15 at 10-12.)

A party "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

(2008). A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see also Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026).

Petitioner's operative order of removal only lists Afghanistan as the country of removal, of which Petitioner is a citizen. (Dkt. # 8-4 at 4.) Respondents contend they have not identified a possible third country for Petitioner's removal, nor served Petitioner with a notice of removal to a third country. (Dkt. # 15 at 10.)

Although Petitioner asserts the government's third-country removal process is constitutionally deficient, the Court finds it notable that Petitioner does not take issue with the government's conduct with respect to its prior attempts to remove him to Costa Rica, Panama, El Salvador, Mongolia, Paraguay, Spain, Philippines, the United Kingdom, Australia, Chile, or Denmark. (*See generally* dkt. # 11.) Petitioner does not, for example, assert he had insufficient notice or opportunity to challenge his removal to any of those countries, or that removal to any of them would have been punitive. Instead, Petitioner appears to primarily rely on other cases from this District that have granted similar relief but fails to connect them to his individual circumstances. (*Id*. at 10-14.) On the current record, Petitioner has not demonstrated that the government's third-country removal practices are so constitutionally deficient that permanent injunctive relief is warranted. His request for injunctive relief is therefore denied without prejudice. Nothing prevents Petitioner from seeking relief in the future, should he deem it necessary.

Finally, Petitioner seeks injunctive relief barring his future redetention unless the government satisfies certain criteria during a hearing before a neutral decisionmaker. (Dkt. # 11 at 15.) Petitioner does not challenge the circumstances of his initial detention, develop a factual

record supporting his request, provide legal authority, or otherwise explain why such specific injunctive relief is necessary to prevent a cognizable danger of unlawful redetention. His request is therefore denied.

## IV. CONCLUSION

Based on the foregoing, the Court hereby ORDERS as follows:

(1) Petitioner's amended petition for writ of habeas corpus (dkt. # 11) is GRANTED in part.

(2) Within fourteen days of the date of this Order, the government shall provide Petitioner with a bond hearing that complies with the requirements of *Singh v. Holder*, 638 F. 3d 1196 (9th Cir. 2011), at which the government bears the burden to prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community. Nothing in this Order prevents Petitioner from requesting a continuance of the bond hearing.

(3) Petitioner's remaining requests are DENIED without prejudice.

(4) Respondents must file a status report with the Court detailing if and when the bond hearing occurred, if the immigration judge granted or denied bond, and, if denied, the reasons for that denial.

(5) Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and comply with the Court's meet-and-confer requirement outlined in its Chambers Procedures.

Dated this 21st day of August, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge